521 A.2d 920

**John TONKOVIC, III, Appellant,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued May 14, 1986.

Decided March 2, 1987.

Reargument Denied May 6, 1987.

446

Richard C. Angino, Joseph M. Melillo, Harrisburg, for appellant.

Richard H. Wix, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

The issue presented by this appeal is whether Appellant, John Tonkovic, III, is bound by an exclusionary clause in an insurance contract, where such clause was unilaterally inserted by Appellee, State Farm Mutual Automobile Insurance Company, subsequent to Appellant's application and premium payment being accepted by Appellee, through its agent, for disability insurance coverage without any exclusion; and where such exclusion was neither explained to, nor accepted by, the Appellant.

The present controversy arose under the following facts: In July of 1979, Appellant applied for an insurance policy providing disability coverage offered by Appellee. It is undisputed that Appellant applied for coverage that would enable him to make his mortgage payments in the event of his injury, without regard to where such injury might occur, or whether Appellant might be eligible for worker's compensation benefits. The insurance agent from whom Appellant purchased the policy testified on cross-examination:

Q. When he [Appellant] came in to see you ... you knew why he wanted disability insurance, isn't that true?

A. When he came in, he stated to me that he wanted disability insurance for the mortgage on his home.

Q. The mortgage on his home, and when you filled out the original application, it was with the understanding that you were applying for insurance that

would cover him whether or not he was eligible for workmen's compensation benefits, isn't that true?

A. That's correct. (N.T., pp. 85, 86.)

It is also undisputed that at the time of application for the policy, the Appellee's agent explained the significance of occupational classifications only in terms of premium costs, not scope of coverage. The agent so testified:

Q. Now it's true also, that you never told him [Appellant] the effects of the various classifications at that time, except that if you were classified as a Class 2 rather than something else, it would cost him less money, isn't that true?

A. That's correct, we were applying as Class 2.

Q. So that if you later told him that his classification had been changed, that would only mean to him that it would cost him a different amount of money, isn't that true?

A. That's correct. (N.T., p. 86).

Appellant was injured on the job on October 15, 1979, and received workers' compensation benefits. He filed a claim for disability benefits with Appellee and this claim was denied. Appellee explained that it had issued to Appellant a policy which classified Appellant as a Class 3 and specifically excluded coverage for injuries incurred in the work place for which workers' compensation benefits were available. Appellant had never seen this policy nor had Appellee ever communicated to Appellant that the coverage he had ordered and paid for had not been furnished.

Appellant instituted an action in assumpsit to recover benefits claimed pursuant to the coverage he had purchased.

At trial, Appellant testified that he never received the written policy and presented substantial evidence to support his claim. Appellant also averred that he was never advised of the variation between the policy for which he applied and that which was issued containing the exclusion. Appellee's agent testified that he delivered a copy of the amended

contract to Appellant's home on Potatoe Valley Road on August 23, 1979, and introduced a receipt signed by Appellant and bearing the date of August 23, 1979. The agent also testified that he went over the policy with Appellant on August 23, 1979, and "went into" the modifications and restrictions in the policy. However, when asked whether he could specifically recall telling Appellant that if he were hurt on the job and could receive worker's compensation benefits, that Appellant would not be eligible for benefits under the policy, he replied:

A. No, I did not state that—what you just stated.

Q. What did you state?

A. I went over the exclusions in the policy with him which include workmen's compensation. (N.T., p. 87).

Both Appellant and his wife contradicted that testimony by showing that they did not purchase the home to which the agent claimed he delivered the policy, nor live in it until mid-September of 1979. Further, although Appellant identified the signature on the receipt as his own, he denied any recollection of signing the receipt or receiving a copy of the policy at that, or any other, time. Following the conclusion of testimony, when the case was submitted to the jury, the trial judge charged the jury as follows:

This is what the cases have said: the burden is upon the insurer, that would be State Farm, it would be the burden upon the insurer to establish the insured's, this would be Mr. Tonkovic, awareness and understanding of the exclusions. So, even though the initial burden in this case is with the plaintiff and it stays with the plaintiff, indeed, there is a burden upon the insurance company in this case to prove to you by a preponderance of the evidence, that Mr. Tonkovic was aware and understood the exclusion that existed here....

The question that is before you is the one single and unique issue: was this policy which was completed by State Farm Insurance Company, was it then presented to Mr. Tonkovic, and was he, in this particular case, made

aware, and did he understand that if he had Workmen's Compensation then he was excluded from the disability benefits provided for in this policy. And that is the issue before you. Of course, most of this testimony did deal with it. (R. 155a).

Following the charge to the jury, counsel for Appellee excepted to the Court's charge which placed the burden of proof upon the insurer as to the enforceability of the exclusionary clause contained in the disability insurance policy issued by Appellee. The case was submitted to the jury with the above charge, and the jury returned a verdict in favor of the Appellant and against Appellee, Insurance Company. There were no specific findings requested or made by the jury.

Appellee's Motions for Judgment N.O.V. and for a New Trial were denied.[1] A divided panel of the Superior Court, 337 Pa.Super. 123, 486 A.2d 512, reversed the judgment and remanded for a new trial, relying on our decision in *Standard Venetian Blind v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). This appeal followed and we granted discretionary review.[2]

Initially we note that we need not decide the issue of whether *Venetian Blind, supra,* requires retroactive application because of our determination that it is not applicable to the instant case. The essence of Appellant's argument is that this case is factually very different from *Venetian Blind,* and is not within the scope of that decision. We agree with Appellant that *Venetian Blind* is clearly distin-

1. These motions were based on a claim that the trial court erred in charging the jury concerning Appellee's burden of proof under *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super.Ct. 511, 327 A.2d 363 (1974). The validity of the *Hionis* doctrine was then before this Court in the case of *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). The *Venetian Blind* decision was handed down on December 30, 1983, eleven (11) months after the proceeding in the instant case. The trial court, although aware of the fact that this issue was pending before this Court, charged the jury pursuant to *Hionis.*

2. See Judicial Code of 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978. As amended by the Judiciary and Judicial Procedure Act of 1980, Oct. 5, P.L. 693, No. 142, § 402(a), 42 Pa.C.S. § 724.

guishable on its facts from the instant case. There, a self-employed businessman purchased a general liability policy on behalf of the company of which he was a partner. The policy provided personal injury and property damage liability coverage for all sums which the insured would be legally obligated to pay as damages and further provided that the insurance carrier had the right and the duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage up to the policy limits. The policy conspicuously displayed and sequentially listed the types of claims and losses which were excluded from the policy's coverage. When the insured (Venetian) subsequently submitted a claim, the insurer agreed to pay for the damage caused by Venetian's products, but refused to defend an assumpsit action for work performed by Venetian or to pay for damage caused to Venetian's products themselves. The insurer based its refusal on an exclusion provision which expressly excluded such losses from coverage under the policy. The insured admitted that, although he had received a copy of the policy, he never read it, because he had relied on the judgment of the insurance agency and that he had indicated to the agency that he wanted full coverage on everything he had.

The insurance policy issued, however, was what it purported to be, and what the insured purchased, a general liability policy. The purpose of a general liability policy is to protect an insured from claims made by third parties for injuries to their person or property resulting from the policyholder's negligence. In such a case, it is patently unreasonable for an insured to contend that he should be paid for *his own* property damage loss from a liability policy. Neither the negotiations for benefits nor the type of coverage sought would lead an insured to believe that a liability policy would provide insurance coverage on one's own property. Based on these facts and circumstances, we determined that the insured could not avoid the consequences of the exclusion provision by asserting that he failed to read the policy, or that he did not understand it.

■ Appellant argues that where one applies and pays for certain coverage in advance, and the insurance carrier then unilaterally reduces and excludes the coverage desired, then the insurer should still have the responsibility to advise the insured that the coverage desired and paid for has been limited in the final policy. Contrary to the facts in *Venetian Blind*, Appellant here specifically requested a type of coverage that would have protected him in this instance, but was issued a policy quite different from that which he requested. Also contrary to *Venetian Blind*, Appellant's claim is that he *never received* a copy of the policy and had never been advised of a change in the coverage that he had originally applied for, *not* that he received it, but failed to read it.

Finally, Appellant asserts that since he applied for a policy without a workers' compensation exclusion, and had an express understanding with the insurance agent to this effect, he had a right to expect that the actual written contract would not modify the agreement unless he was explicitly advised of such modification. In support of this proposition, Appellant cites our decision in *Rempel v. Nationwide Life Insurance Co.*, 471 Pa. 404, 370 A.2d 366 (1977), wherein the insured purchased mortgage life insurance with—he believed—a $5,000.00 death benefit above the mortgage balance. His understanding resulted from negotiations with the insurer's agent for precisely that type of insurance. The policy actually delivered *did not* provide the additional $5,000.00 benefit. The Rempels never read the policy and the change was never discussed until after Mr. Rempel's death, when benefits were sought under the life insurance contract. The insurer denied the extra benefit and suit was brought on a theory of tortious misrepresentation. The jury found in favor of the insured and we affirmed, stating that "the policyholder has no duty to read the policy unless under the circumstances it is unreasonable not to read it." 471 Pa. 404, 411, 370 A.2d 366, 369.

Appellee, on the other hand, relies solely on *Venetian Blind*, and contends that our holding there is totally dispositive of the issues in this case. Based on the clear and

unambiguous language of the exclusionary clause, Appellee argues that its motion for judgment n.o.v. should be granted in light of *Venetian Blind.* Alternatively, Appellee asserts that its motion for a new trial should be granted based upon the trial court's erroneous charge to the jury that it is the insurer's burden of proof to establish that the insured was aware of and understood the exclusion for coverage set forth in the disability policy issued to the Appellant. For the reasons set forth below we disagree on both grounds.

In *Venetian Blind,* although we rejected the Superior Court's holding in *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super.Ct. 511, 327 A.2d 363 (1974), that:

> [W]here a policy is written in unambiguous terms, the burden of establishing the applicability of the exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him.

230 Pa.Super.Ct. at 517, 327 A.2d at 365, we qualified our decision by stating:

> Although on this record we reject *Hionis,* we note that in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance. See 13 Pa.C.S. § 2302 (court may refuse to enforce contract or any clause of contract if court as a matter of law deems the contract or clause of the contract to have been 'unconscionable at the time it was made'). This record does not present such an occasion. We hold *only that where as here,* the policy limitation relied on by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it. (emphasis added).

503 Pa. at 307, 469 A.2d at 567.

▆▆ Thus, we made it clear that our holding was not to be mechanically applied without regard to the factual con-

text in which the claim arose. *Venetian Blind* is simply not applicable to the facts of the instant case. Neither did we intend by our decision in *Venetian Blind* to overrule or create a conflict with our decision in *Rempel v. Nationwide Life Insurance, supra,* which is clearly controlling on the instant facts. We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for. When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes, or not read it at his peril.

Moreover, the claim in the instant case is that Appellant never received a copy of the policy. At trial, Appellant presented substantial evidence to support this claim. Appellant also averred that he was never advised of the variation between the coverage for which he applied and that which was issued containing the exclusion. While there was conflicting testimony, the jury, as was their province, resolved this credibility issue in favor of Appellant, as evidenced by their general verdict in his favor. However, Appellee contends and indeed the Superior Court held that the trial court, in its charge to the jury, failed to clarify the two discrete issues presented, i.e., whether Appellant received a copy of the policy, and whether Appellee proved that Appellant was made aware of and understood the exclusionary language. Since the question presented for the jury's consideration merged these issues, Superior Court determined that it could not be discerned whether the jury determined that Appellant never received the policy in question, or whether it held that Appellee failed to sustain its burden of proof. Thus, Superior Court remanded the case for a new trial.

In light of our determination that *Venetian Blind* is not applicable to this case, we find that the trial court charged the jury in conformity with Pennsylvania law. If, indeed, there was error in merging the two issues, it was harmless, because a finding for Appellant on either issue would have been sufficient to support the jury's verdict.

■ The jury verdict established at a minimum that Appellant was never made aware of the substantial discrepancy between the coverage for which he applied and that which the policy actually provided. This is a sufficient basis upon which to affirm the jury's verdict for Appellant. In our review of the denial of a motion for judgment n.o.v., or a new trial, we will reverse the trial court only when we find an abuse of discretion or an error of law which controlled the outcome of the case. See, *Martin v. Johns-Manville Corporation,* 508 Pa. 154, 494 A.2d 1088 (1985); *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985). In passing on the question, we must view the evidence and all reasonable inferences therefrom in the light most favorable to Appellant, the verdict winner. Evidence supporting the verdict is considered and the rest is rejected. Conflicts in testimony are resolved in favor of the verdict winner. *Glass v. Freeman,* 430 Pa. 21, 240 A.2d 825 (1968). Since our review of the record indicates that there was sufficient evidence to support the jury's verdict, the trial court properly denied Appellee's motions for judgment n.o.v. and, in the alternative, a new trial.

■ We hold that where, as here, an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy. We note that this holding is in accord with our decision in *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346, *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1978), recognizing the adhesionary nature of insurance transactions, wherein we stated:

The reasonable expectation of the insured is the focal point of the insurance transaction involved here. E.g. *Beckham v. Travelers Insurance Co.*, 424 Pa. 107, 117–18, 225 A.2d 532, 537 (1967). Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid. Courts should also keep alert to the fact that the expectations of the insured are in large measure created by the insurance industry itself. Through the use of lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent. Such representations may or may not accurately reflect the contents of the written document and therefore the insurer is often in a position to reap the benefit of the insured's lack of understanding of the transaction. As stated by the New Jersey Supreme Court in *Allen v. Metropolitan Life Ins. Co.*, supra, 44 N.J. 294, 302, 208 A.2d 638, 642 (1965):

Much of the difficulty may be laid at the doorstep of the life insurance industry itself for, despite repeated cautions from the courts, it has persisted in using language which is obscure to the layman and in tolerating agency practices which are calculated to lead the layman to believe that he has coverage beyond that which may be called for by a literal reading. The reports are replete with instances where company agents, as here, obtained payment of the full annual premium in advance on the broad representation that there would be interim coverage pending the company's investigation of the application and its action thereon.

Courts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expecta-

tions of the consumer. See, e.g., *Rempel v. Nationwide Ins. Co.*, 471 Pa. 404, 370 A.2d 366 (1977). Courts must also keep in mind the obvious advantages gained by the insurer when the premium is paid at the time of application. An insurer should not be permitted to enjoy such benefits without giving comparable benefit in return to the insured.

*Collister, supra,* 479 Pa. at 594–95, 388 A.2d at 1353–54.

The Order of Superior Court granting a new trial is reversed and the record is remanded to the Court of Common Pleas of Dauphin County with the direction that judgment be entered in favor of Appellant in accordance with the jury's verdict.

HUTCHINSON, J., concurs in the result.

FLAHERTY and ZAPPALA, JJ., file dissenting opinions.

FLAHERTY, Justice, dissenting.

I dissent. The appellant in this case purchased insurance coverage which was subsequently limited by the company, and the question which arises is whether the appellant is bound by the limitation. The simple answer should be that he is bound if (1) the original insurance contract allows the company to make unilateral changes in coverage; (2) notice of the changes is given to the purchaser; (3) an uncounseled purchaser of ordinary intelligence would reasonably be able to understand the changes as they are communicated.

Only recently in *Gene & Harvey Builders v. Pennsylvania Manufacturers' Association Insurance Co.*, 512 Pa. 420, 517 A.2d 910 (1986) this Court reaffirmed the importance of the written insurance contract and the familiar principles of insurance contract interpretation; i.e., that the intent of the parties is manifested by the language of the written instrument; that ambiguities in policies are to be construed against the insurer; that where the language is clear and unambiguous, a court must give effect to that language; and that failure to read the contract is "an

unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof." 512 Pa. at 426, 517 A.2d at 913, citing *Standard Venetian Blind v. American Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983).

The majority in the present case, however, ignores these basic and time-tested principles, and relies instead on an approach taken in *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), which was expressly rejected in *Standard Venetian Blind* and *Gene and Harvey Builders* to the effect that the insurer must prove that the insured was aware of the exclusion or limitation and that he understood its effect. As the majority puts it, "where ... an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood the change, regardless of whether the insured read the policy." At 455. Thus, the majority promulgates a new *Hionis*-like rule and goes further, contrary to *Standard Venetian Blind* and *Gene and Harvey Builders*, to hold that an insured does not even have to read the policy.

As we stated in *Standard Venetian Blind*, a court may be required on occasion to deviate from the plain language of an insurance contract, 503 Pa. at 307, 469 A.2d at 567, but such a deviation should be the exception, not the rule. If, as the majority says, an insured need not even look at his policy, why then should insurance companies even issue them? Why, indeed, should they even be admitted at trial? Why should we base our decisions on them? But if writings are not issued and if writings do not memorialize the agreement of the parties, then all contract disputes, insurance and otherwise, would be reduced to conflicting remembrances and assertions of the parties.

If the majority's concern is that ordinary consumers may not be able to understand a particular policy or provision, the approach which I have proposed would answer that problem: the consumer would be held to understand what a

person of ordinary intelligence, acting without counsel, would understand from reading the policy or exclusion. If there is an ambiguity or if the language is so complex that such a person would not be likely to understand it, then the policy must be construed against the insurer. Such an approach has the virtue of preserving the importance of concrete evidence of the agreement (the writing), while allowing for the fact that the insurance company drafter may purposely or negligently obscure the meaning of what is written.

I would, therefore, remand for a new trial on the issue of whether unilateral changes were permitted under the original policy, whether the insured was notified of the changes, and if he was, whether a person of ordinary intelligence would have understood the changes.[*]

ZAPPALA, Justice, dissenting.

I must dissent from the majority's conclusion that *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983) is inapplicable to this case. Underlying the majority's conclusion is its perceived distinction between an insured who requests a specific type of coverage, but obtains a policy which does not provide the requested coverage, and an insured who receives the re-

---

[*] In any event the case should be remanded for a new trial, for the trial court gave an instruction based on *Hionis*, which was expressly overruled in *Standard Venetian Blind*.

Although the majority correctly states that *Standard Venetian Blind* is distinguishable on the facts from the present case in that here, allegedly, the appellant bargained for a particular coverage which was subsequently eliminated, and *Standard Venetian Blind* concerned an apparent misunderstanding about the coverage afforded by an insurance policy, this factual difference is not significant. Both cases concern the question of whether an exclusion is to be given effect and the present case could be removed from the rule of *Standard Venetian Blind* only if it were established that the appellant did not receive a policy.

The instruction in the present case should have been that if the jury found that appellant never received a policy, the limitation was without effect. If, on the other hand, it found that he did receive a policy, the question then, under *Standard Venetian Blind* and *Gene & Harvey Builders*, would be whether the language of the contract plainly established a limitation.

quested coverage, but fails to read the policy provisions. The majority categorizes the Appellant among the former. Proceeding from this characterization, the majority then determines that the trial court's charge on the issue of the exclusionary language of the policy was correct. The majority erroneously relies upon *Rempel v. Nationwide Life Insurance Co.*, 471 Pa. 404, 370 A.2d 366 (1977) and disregards the nature of the action filed by the Appellant.

In *Rempel,* the insured initiated a trespass action against the insurance company and its agent for negligent misrepresentation. The insured contended that the agent had negligently or fraudulently misrepresented that the insurance policy which had been procured by the agent would provide for a payment of any outstanding mortgage balance on the insured's home on the date of his death, plus an additional $5,000. The policy was issued by the insurance company following an inquiry by the insured's wife as to whether its agent could match a policy offered by another insurance company for mortgage protection and the $5,000 life insurance benefit. Representations were made to the insured's wife that the policy would provide the requested coverage.

Unlike *Rempel,* however, the Appellant in this case brought an action in assumpsit asserting that the Appellee's denial of coverage was wrongful as it was based upon a policy exclusion which was not brought to his attention. The Appellant did not set forth a separate cause of action in trespass for negligent misrepresentation, but sought only to recover on the insurance policy which had been issued.

Consistent with the contract cause of action stated in this complaint, the only testimony presented in the case in chief was that of the Appellant himself. The Appellant testified at length that he was not told about any exclusions in the policy, that he did not read the insurance policy, and that he never received an insurance policy pertaining to disability. It is noteworthy that the Appellant did not plead in his complaint or testify that he directed the Appellee's agent to procure disability insurance that would be paid without

regard to the existence of workmen's compensation coverage. The Appellant testified only to the following exchange with the agent:

Q: And would you tell the jury when you went there how the application was filled out and how it was executed and so forth?

A: Mr. LaPorte and I, we had a rapport where I don't know insurance, and I still don't, and maybe I'm guilty for taking things just for granted as far as insurance is concerned, I just told him basically what I needed, the mortgage payment the amount that I could cover, and Mr. LaPorte told me I didn't make enough money to substantiate the whole payment but I could get $450 which was awful close, give or take a few dollars.

[R. 13a—14a]. He further testified:

Q. Mr. Tonkovic, when you bought the insurance, did you desire to buy insurance which would cover you with this kind of exclusion?

A: I wouldn't purchase an insurance policy with that type of exclusion. Where else would I get hurt than automobile or work. I just never gave any thought to it. It was never mentioned. I didn't dream I would be hurt in October.

[R. 27a—28a].

It was not until the Appellee presented the testimony of its agent, Norman LaPorte, that there was any reference to an understanding that the Appellant was applying for insurance which would provide coverage despite eligibility for workmen's compensation. At no time did the Appellant move to amend or conform the pleadings to include a trespass action for negligent misrepresentation after this reference of the agent's failure to obtain requested coverage was made. Instead, the Appellant proceeded with his assumpsit claim for wrongful denial of coverage on the insurance policy which had been issued. The majority's holding depends upon its analysis of a cause of action which was not raised in the Appellant's complaint or by the theory

of the case during the course of trial. Although the majority has raised a legal theory which may be applicable to the factual circumstances of this case, this Court is not at liberty to redraft the Appellant's complaint or to dispose of the appeal on legal issues which were not presented by the parties.

The basis of Appellant's claim was that the exclusionary language of the policy had not been explained to him. The trial court specifically charged the jury that the burden was upon the insurer to establish the insured's awareness and understanding of the exclusion under the existing law of *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974). The Appellee took a specific exception to the charge, asserting that the policy was clear and unambiguous as to exclusion. Inasmuch as the *Hionis* decision was subsequently overruled by this Court, I believe that the Superior Court's order reversing the judgment and remanding the matter for a new trial should be affirmed.