**STATE FARM INSURANCE COMPANY, Plaintiff**

v.

**Kathryn TAYLOR, Mark Taylor, and Taylor General Contracting, Inc., Defendants**

No. CIV.A. 02–7459.

United States District Court, E.D. Pennsylvania.

Nov. 25, 2003.

ments could nevertheless result in a determination on the merits.

Sean M. Corr, Corr, Stevens & Fenningham, Warminster, PA, for Plaintiff.

James R. Radmore, Law Office of James R. Radmore PC, Philadelphia, PA, for Defendants.

### MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

This insurance coverage dispute comes before the Court on the parties' cross-motions for summary judgment. For the reasons below, Plaintiff's motion is granted and Defendants' motion is denied.

## I. BACKGROUND

Plaintiff is State Farm Mutual Automobile Insurance Company ("State Farm"), a mutual insurance company with its principal place of business in Illinois. Defendants are Pennsylvania citizens Kathryn and Mark Taylor (wife and husband) and Taylor General Contracting, Inc. (the "Corporation"). The Corporation is closely held by Mark Taylor. Kathryn Taylor is the Secretary of the Corporation. Jurisdiction is premised on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

On June 5, 1992, Mrs. Taylor was involved in an automobile accident and suffered personal injuries. She presented an insurance claim against the other driver and settled for the limits of that driver's liability insurance policy. At the time of the accident both Mrs. Taylor and her son were named insureds on two State Farm policies. Mrs. Taylor presented claims for underinsured motorist ("UIM") benefits under both of these polices, and State Farm paid the limits of UIM coverage on both policies.

The Corporation was the named insured on four identical automobile policies issued

by State Farm with UIM limits of $100,000 each. Seeking to stack her UIM coverage, Kathryn Taylor made a claim for UIM benefits under these corporate policies. State Farm denied each claim and the instant action followed.

The parties seek a declaratory judgment as to whether Kathryn Taylor qualifies as an "insured" for purposes of collecting UIM benefits under the four Corporation policies. *See* 28 U.S.C. §§ 2201–02. The Court heard oral argument on the parties' cross-motions for summary judgment on October 31, 2003. The parties agree that there are no material issues of fact in dispute,[1] and that Pennsylvania law governs.

## II. DISCUSSION

State Farm argues that UIM benefits under the Corporation's policies are limited to individuals who occupy the vehicles insured under that policy (*i.e.*, the corporate vehicles) at the time of the accident. Because Kathryn Taylor occupied her own personal vehicle at the time of the accident, not one of the four corporate vehicles covered under the Corporation's policies, she is not entitled to UIM benefits.

It is firmly established that the task of interpreting an insurance contract is generally performed by a court rather than a jury. *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). The Court must ascertain the intent of the parties as manifested by the language of the written instrument. *Id.* If the contractual language

is clear and unambiguous, the Court must give effect to that language. *Id.*

The policies at issue define "insured" in two places. The "general definition" provides: *"Insured—means **person, persons** or organization defined as **insureds** in the specific coverage."* State Farm Policy Form 9838.5 at p. 3 (attached to Plaintiff's Motion at Ex. A). The definition of "insured" applicable to UIM coverage appears in the endorsement. It provides:

**Who is an Insured—Coverages U and W**

*Insured*—means the **person** or **persons** covered by uninsured motor vehicle or underinsured motor vehicle coverage. This is:

1. the first **person** named in the declarations;

2. his or her **spouse;**

3. their **relatives;** and

4. any other **person** while **occupying:**

    a. **your car,** a **temporary substitute car,** a **newly acquired car,** or a trailer attached to such **car.** Such vehicle has to be used within the scope of the consent of **you** or **your spouse;** or

    b. a **car** not owned by **you, your spouse** or any **relative,** or a trailer attached to such a **car.** It has to be driven by the first **person** named in the declarations or that **person's spouse**

---

1. The familiar summary judgment standard governs today's decision. Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

and within the scope of the owner's consent.

> Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*.

5. any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

Amendatory Endorsement 6997AF at p. 2 (attached to Plaintiff's Motion at Ex. B). At the time of the accident, the declaration pages of the four polices listed "Taylor Contracting, Inc." as the named insured. *See* Declaration Pages for policy numbers 804 6123–A22–38A, 804 6123–A22–38A, 804 6124–A22–38A and 804 6125–A22–38A (attached to Defendants' Motion at Ex. C).[2]

State Farm argues that Mrs. Taylor does not qualify as an "insured" under these contractual terms. First, she is not the "first person" named in the declarations because there is no "person" named therein.[3] Instead, the Corporation is the named insured listed in the declarations. It follows that Mrs. Taylor is not the Corporation's "spouse" or one of its "relatives." Mrs. Taylor was not occupying the Corporation's car ("your car"),[4] "a temporary substitute car," "a newly acquired car," or a trailer attached to any car. Finally, Mrs. Taylor is not a person entitled to recover damages because of bodily injury to an insured.

The Court agrees that Mrs. Taylor does not meet any of the definitions of "insured" for UIM coverage as defined in the Corporation's policies and thus is not entitled to UIM benefits under the Corporation's polices. The definitions of "insured" for purposes of UIM coverage are clear and unambiguous. Other courts have reached the same conclusion in analogous situations involving policy language of similar effect. *See, e.g., N. Ins. Co. of N.Y. v. Resinski*, 827 A.2d 1240, 1244 (Pa.Super.2003) (holding wife of principal shareholder and director of corporation who was injured in car owned by her husband could not recover UIM benefits under policy issued to corporation); *Hunyady v. Aetna Life & Cas.*, 396 Pa.Super. 476, 578 A.2d 1312 (1990) (holding wife of corporate officer who was injured in her personal vehicle cannot recover UIM benefits under policy issued to husband's corporation), *aff'd*, 530 Pa. 25, 606 A.2d 897 (1992) (Table).

Defendants do not seriously dispute this reading of the contractual language.[5] In-

---

2. These declarations are for an insured period prior to the accident. Nonetheless, there is no dispute that the declarations listed the Corporation as the named insured at the time of the accident.

3. "Person—means a human being." State Farm Policy Form 9838.5 at p. 3.

4. "*You* or *Your*—means the named insured or named insureds shown on the declarations page." State Farm Policy Form 9838.5 at p. 4.

5. Defendants make one passing argument regarding the policy language. They note that the general definition of "insured" includes "the person, persons or organization defined as insureds in the specific coverage," but the definition set forth in the UIM endorsement omits the term "organization." They contend that this omission is of great significance because removing the word *organization* "leaves no other conclusion but that [State Farm] recognized an 'organization' cannot sustain bodily injury and thus cannot be the beneficiary" of UIM coverage. Therefore, they argue, UIM coverage in the Corporation policies "is clearly intended for 'persons.' " Defendants' Mem. at pp. 5–6. This is clearly correct. Under the Corporation's policies, "any person" occupying one of the Corporation's cars at the time of the accident qualifies as an insured. However, it does not mean that Mrs. Taylor, who was not occupying a Corporation vehicle at the time of accident, is entitled to UIM benefits simply because she, too, is a "person."

stead, they argue that State Farm unilaterally amended the Corporation's policies in September 1990, and that this amendment now works to deprive Mrs. Taylor of UIM benefits. When originally issued on August 14, 1990, the four policies at issue listed "Mark A. Taylor" as the "named insured" on the declarations. *See* Declaration Pages for policy numbers 804 6123–A22–38, 804 6123–A22–38, 804 6124–A22–38 and 804 6125–A22–38 (attached to Plaintiff's Answer to Defendants' Motion at Ex. A). On September 6, 1990, State Farm processed a document entitled "Auto Policy Transactions" ("APT") for each of the four policies. Each APT contains the following explanatory remark: "NAME CORRECTION—POLICY SHOULD READ TAYLOR CONTRACTING INC.—VEH IS REGISTERED THIS WAY." APT (attached to Defendants' Motion at Ex. B). On September 11, 1990, State Farm issued to Defendants substitute declaration pages that listed "Taylor Contracting, Inc." as the named insured for each policy. In addition, the letter "A" was appended to each of the original policy numbers. The premium for UIM benefits increased from approximately $0.216 per day to $0.242 per day.[6] The mailing address for the policies remained the same. The new declaration pages changed the policy inception date from July 22, 1990 to September 6, 1990. The parties agree that the policy language remained the same.

Defendants contend that State Farm made these changes unilaterally and failed to advise Defendants that there was any substantive change in the Corporation's policies. More specifically, Defendants contend that State Farm never advised them that there would be any change in

entitlement to UIM benefits as a result of the change in the "named insured." The parties agree that Mrs. Taylor would be entitled to UIM benefits if, at the time of accident, her husband had been listed as the named insured in the declarations.

State Farm insists that it changed the "named insured" at Defendants' request. Defendants obtained the Corporation's insurance policies through an insurance agent named Leonard Adamusko. Mr. Adamusko's long-time employee, Christine Verniero, is the insurance agent who processed the APTs. Ms. Verniero states in an affidavit submitted to the Court that she remembers dealing with Mrs. Taylor on numerous occasions over the years but has no specific recollection of the reason she processed the APTs thirteen years ago. Verniero Aff. at 1 (attached to Plaintiff's Answer to Defendants' Motion at Ex. C). She acknowledges that she processed the APTs and directed that the name on the policy be changed to match the name on the vehicle's registration. She is "confident," however, that she processed the APTs at Mrs. Taylor's request. Ms. Verniero explains that there is no independent source of information available to her regarding the name on any insured's vehicle registration, and that the only way she has ever learned that information is to ask the insured. *Id.* As part of her training to become a licensed insurance agent and in her continuing education classes, Ms. Verniero learned that making an unauthorized change to an insurance policy is forbidden because an insurance policy is the property of the insured. "We are taught that this is a very serious issue and that it is against the law for us to violate this rule." *Id.* at 2. Ms. Verniero states that she "would never knowingly violate or intentionally vi-

---

**6.** The policies issued to Mark A. Taylor charged $40.05 for a 185 day period (7/22/00 to 1/22/01), or approximately $0.216 per day.

The policies issued to the Corporation charged $33.64 for 139 days (9/6/00 to 1/22/01), or approximately $0.242 per day.

olate this rule." *Id.* Mr. Adamusko submitted an affidavit containing similar representations.

Defendants have presented no contrary evidence to support their contention that State Farm unilaterally changed the "named insured" on the declaration pages without Defendants' authorization.[7] Counsel for Defendants speculated at oral argument that State Farm's underwriters may have unilaterally changed the "named insured," but he submitted no evidence to that effect.

■ Even assuming Defendants could produce evidence demonstrating that State Farm made a unilateral, unauthorized change to the "named insured," Defendants ratified and thereby assented to the change. There is no dispute that Defendants received copies of the policies and the new declaration pages years before the accident. By paying the premiums and renewing the policies three times prior to the accident, Defendants accepted and ratified the terms of the policies, including the "named insured" appearing in the declarations. *See* Richard A. Lord, 12 *Williston on Contracts* § 35:22 (4th ed. 2003) ("Where an agent lacks actual authority to agree on behalf of the principal, the principal may still be bound if the principal acquiesces in the agent's action, or fails to promptly disavow the unauthorized conduct after acquiring knowledge of the material facts."); *Restatement (Second) of Contracts* § 380(2) (1981) ("The power of a party to avoid a contract for mistake or misrepresentation is lost if after he knows or has reason to know of the mistake or of the misrepresentation … he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance."); *see also United States v.*

*One 1973 Rolls Royce,* 43 F.3d 794, 818 n. 26 (3d Cir.1994) ("The concept of ratification in agency law, for example, allows a principal to be bound by an agent's unauthorized prior act if the principal knows about it and fails to take affirmative steps to disavow the act.") (citation omitted).

Defendants accepted the benefits of coverage when they paid the policy premiums. Had they reviewed the insurance documents prior to Mrs. Taylor's accident, they would have reached the inescapable conclusion outlined above: if Mrs. Taylor became involved in an accident in her personal vehicle with an underinsured driver, she would not be eligible for UIM benefits under the Corporation's policies. Despite having sufficient information available to them, Defendants did nothing in the twenty-one months between the policies' inception dates and the date of the accident to address any perceived questions or errors concerning the "named insured" or the scope of coverage.

■ Defendants make much of the fact that State Farm admitted that "the terms of the policy which was to be (and later in fact was) issued were fixed at the time the coverage was bound." Requests for Admissions Directed to Plaintiff at ¶ 22 (attached to Defendants' Motion at Ex. E). Defendants insist that because the "terms" of the policies never changed when the "named insured" changed, they had a reasonable expectation of UIM coverage. *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 825 A.2d 641, 644 (Pa.Super.2003) ("The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.") (citation omitted). However, even assuming Defendants genuinely expected that Mrs. Taylor would

---

**7.** Defendants do not argue that State Farm made any misrepresentations as to the terms

or scope of coverage under the Corporation's policies.

be covered under the Corporation's policies, such an expectation is not reasonable because it is contrary to the clear and unambiguous language of the policies. *See Bensalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir.1994) ("[A]ny reasonable expectation ... must necessarily rely upon, and be reasonably consistent with, the written documents and phraseology, simply because any interpretation advanced contrary to the contents of the written documents could hardly be viewed as 'reasonable' to assert; unless good reason in law is advanced for the disregarding of the clearly contrary phraseology.") (citation omitted); *Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa.Super.1998) ("While reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.") (internal citations omitted).

While it is true that changing the "named insured" from an individual to a corporation did not change the *terms* (*i.e.*, the language) of the policies' coverage, it did change the *scope* of the policies' coverage. It is no defense that Defendants may have been ignorant of the effects of this change. *Cf. Standard Venetian Blind*, 469 A.2d at 564 ("[L]ack of knowledge or understanding of a clearly drafted exclusion clause in a written contract of insurance executed by both parties does not render the clause unenforceable."). Nor does it assist Defendants if State Farm simply made a mistake in changing the "named insured," for there is ample evidence that Defendants, having received and paid for the policies, should have known it was a mistake. *Cf. Lapio v. Robbins*, 729 A.2d 1229, 1233–34 (Pa.Super.1999) ("[I]f a party to a contract knows or has reason to know of a unilateral mistake by the other

party, and mistake, as well as the actual intent of the parties is clearly shown, ... the mistaken party may void the contract if the mistake is regarding a material term or the mistaken party may enforce the contract so that the other party for whose benefit the contract was performed will not be unjustly enriched.") (internal citation omitted).

■ It became apparent at oral argument that Defendants believe that State Farm should have explained to them the full extent of the consequences attendant to changing the "named insured" on the Corporation's policies. State Farm had no such obligation because this information was readily available in the insurance documents provided to Defendants. The UIM coverage in the Corporation's policies "could have been readily comprehended by [Defendants] had [they] chosen to read them." *Standard Venetian Blind*, 469 A.2d at 566. It is not incumbent on State Farm to notify Defendants of every possible consequence that might flow from changing the "named insured." The undisputed facts of record show that Defendants did not "apply for a specific type of coverage and the insurer unilaterally limit[ed] that coverage, resulting in a policy quite different from what the insured requested." *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920, 925 (1987). Rather, this appears to be a case "where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." *Id.*

■ Defendants make a related argument concerning the first incarnation of the Corporation's policies. At oral argument, counsel directed the Court's attention to the policy application forms completed by Mrs. Taylor. One of the forms

includes a handwritten note stating "not a business rate." [8] Defendants argue that this shows they clearly intended the policies at issue to be "personal" policies and not "business" policies. Therefore, so the argument goes, if the terms of the policies were fixed at the time the application was taken, Defendants are entitled to "personal" policies in the name of Mark A. Taylor, allowing Mrs. Taylor to stack UIM coverage. State Farm responds that it does not characterize its policies as "personal" or "business." Even if State Farm did distinguish on that basis, it is the insurance contract as a whole, not the title alone, that controls. *See Halpin v. LaSalle Univ.*, 432 Pa.Super. 476, 639 A.2d 37, 39 (1994) ("When interpreting a contract, the court's paramount goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement."); Lee R. Russ, 2 *Couch on Insurance* § 21.19 (2003) ("It is not permissible to lift one sentence from a policy and try to attach a particular meaning to that sentence standing alone."). In any event, the Court may only consider admissible evidence in deciding a motion for summary judgment. *Pamintuan v. Nanticoke Mem. Hosp.*, 192 F.3d 378, 387 n. 13 (3d Cir.1999). Defendants' applications for insurance are parol evidence and have no effect on the Court's interpretation of the Corporation's policies. As the Pennsylvania Superior Court has explained:

> [I]t is settled that: where the written contract covers or purports to cover the entire agreement of the parties, and there is no ... proof that anything was omitted therefrom (or included therein) by fraud, accident, or mistake, all prior and contemporaneous negotiations, rep-

resentations and verbal agreements are superceded by the written agreement, and parol (extrinsic) evidence is inadmissible to alter or contradict or vary or add to or subtract from or modify or supercede [sic] the written contract.

*Wayda v. Wayda*, 395 Pa.Super. 94, 576 A.2d 1060, 1066 (1990) (quoting *McFadden v. Am. Oil Co.*, 215 Pa.Super. 44, 257 A.2d 283, 287 (1969)). Defendants make no showing of fraud, accident or mistake, so the parol evidence rule excludes these applications from the Court's consideration.

Finally, Defendants argue that changing the named insured effected a reduction in their UIM coverage, and that any such reduction requires a written request from the insured. Section 1734 of the Motor Vehicle Code provides that "[a] named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily insurance." 75 Pa. Cons.Stat. Ann. § 1734. This section has been held to require the insured's written request in writing before reducing UIM limits. *See, e.g., Motorists Ins. Cos. v. Emig*, 444 Pa.Super. 524, 664 A.2d 559, 565 n. 1 (1995) ("Section 1734 mandates that the request [to change UI/UIM limits] be made *in writing by the insured.*"). Defendants argue that because changing the named insured effected a reduction in UIM coverage, such reduction was void because it was not made pursuant to the their written request. This argument is without merit. As explained above, changing the named insured did not change any terms of the policy, including the UIM limits, so § 1734 does not apply.[9]

---

**8.** The form discussed here is not included with other application forms attached to De-

fendants' Motion at Ex. A. Nonetheless, Plaintiff did not object or question its authenticity.

**9.** Similarly, Defendants argue that the change

Accordingly, summary judgment in favor of State Farm is appropriate. Having granted State Farm's motion, it follows that Defendants' motion is denied. An appropriate Order follows.

### ORDER

**AND NOW,** this 25th day of November, 2003, upon consideration of Plaintiff's Motion for Summary Judgment [Doc. # 9], Defendants' Answer to Plaintiff's Motion for Summary Judgment [Doc. # 13], Defendants' Motion for Summary Judgment [Doc. # 10], Plaintiff's Answer to Defendants' Motion for Summary Judgment [Doc. # 11], after oral argument on the record, and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Plaintiff's Motion is **GRANTED** and Defendants' Motion is **DENIED**. Judgment is hereby entered in favor of Plaintiff and against Defendants. As a matter of law, Defendant Kathryn Taylor is not entitled to receive underinsured motorist benefits from any policy of insurance issued by Plaintiff State Farm Insurance Company to Taylor General Contracting, Inc.

The Clerk of Court shall mark this case closed for statistical purposes.

It is so **ORDERED.**

in the named insured failed to comply with 75 Pa. Cons.Stat. Ann. § 1731(c). That statute merely sets forth how a named insured may *reject* UIM coverage and provides an approved form for doing so. It has no bearing on the issues in this case.