Stacey SMITH, Assignee of James Sprecher; Marjorie Smith, Assignee of James Sprecher, Appellants

v.

CONTINENTAL CASUALTY CO.

No. 08–4140.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 21, 2009.

Opinion Filed: Oct. 8, 2009.

Richard C. Angino, Esq., Daryl E. Christopher, Esq., Angino & Rovner, Harrisburg, PA, for Appellants.

Andrew L. Margulis, Esq., Ropers, Majeski, Kohn & Bentley, New York, NY, for Continental Casualty Co.

Before: BARRY, FISHER and JORDAN, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Appellants Stacey and Marjorie Smith, as assignees of James Sprecher, challenge the District Court's grant of summary judgment to appellee Continental Casualty Company. The Smiths claim that Continental wrongly denied Sprecher coverage and a defense pursuant to the terms of an insurance policy, and that Continental acted in bad faith in that denial. We will affirm.

I. Factual Background

Because we write solely for the benefit of the parties, we presume familiarity with

the facts and will recite only the basic underpinnings of this case.

James Sprecher ("Sprecher") was a financial planner doing business as an agent and registered representative of the broker-dealer Hornor, Townsend & Kent ("HTK"). HTK is a subsidiary of Penn Mutual Life Insurance Company, which obtained, from appellee Continental Casualty Company ("Continental"), insurance for HTK's agents and representatives, including Sprecher. In the early 1990s, appellants Stacey and Marjorie Smith ("the Smiths") hired Sprecher as their financial planner. The Smiths claim that they asked Sprecher to recommend long-term, conservative investments. Following Sprecher's recommendation, the Smiths placed over $200,000 in two off-shore asset protection trusts. Those trusts invested the monies into Evergreen Securities ("Evergreen"), an unregistered off-shore entity. In 2001, Evergreen filed for bankruptcy and the Smiths lost all or most of their investment.

Following Evergreen's collapse, Sprecher was sued by Evergreen's bankruptcy trustee, who averred that Evergreen was a massive Ponzi scheme involving risky mortgage-backed securities derivatives, and that Sprecher funneled his clients' monies into Evergreen in exchange for cash payments. After finding out about the lawsuit and a federal grand jury investigation into Sprecher's activities, HTK terminated Sprecher. Following his termination, Continental denied Sprecher coverage and a defense for the lawsuit initiated by Evergreen's bankruptcy trustee.

The Smiths then sued Sprecher, asserting claims for breach of contract, negligent misrepresentation, intentional misrepresentation, breach of fiduciary duty, and violations of Pennsylvania consumer protection and securities laws. Consistent with its earlier determination, Continental again denied Sprecher coverage and a defense. In January 2007, Sprecher and the Smiths settled the lawsuit for $150,000 and an assignment of Sprecher's rights against Continental. That settlement and assignment gave rise to the case at bar: the Smiths have sued Continental, in Sprecher's shoes, for breach of contract and bad faith denial of insurance coverage.

## II. Terms of the Insurance Policy

The insurance policy at issue here provides coverage for claims arising out of "Professional Services" rendered by an agent or representative of HTK. (*See* Appellants' App. 157, 159.) In relevant part, the term "Professional Services" is defined as:

> those services arising out of the conduct of the Insured's business as a licensed Agent or General Agent. . . . Such services shall be limited to:
>
> \* \* \*
>
> e. the sale or attempted sale or servicing of variable annuities, variable life insurance and mutual funds, which are registered with the Securities Exchange Commission (if required), through a Broker/Dealer that is a member of the National Association of Securities Dealers;
>
> \* \* \*
>
> [A]nd financial planning activities in conjunction with any of the foregoing.
>
> \* \* \*
>
> [Professional Services also includes] those services arising out of the conduct of the Insured's business as a Registered Representative or Registered Investment Adviser. Such services shall be limited to:
>
> a. Investment Advisory Services;

b. the sale or attempted sale or servicing of securities (other than variable annuities, variable life insurance and mutual funds) approved by a Broker/Dealer [in question] and incidental advice in connection therewith.

\*    \*    \*

[A]nd financial planning activities in conjunction with any of the foregoing.

(*Id.* at 189–90, 191.)

Exclusion 6 of the policy excludes from coverage any claim "against a Registered Representative or Registered Investment Adviser involving services or products not approved by [the] Broker/Dealer [in question]." (*Id.* at 161.)

Exclusion 14 of the policy excludes from coverage any claim:

arising out of insolvency, receivership, bankruptcy or inability to pay of any organization in which the Insured has, directly or indirectly, placed or obtained coverage or in which an Insured has, directly or indirectly, placed the funds of a client or account; however, this exclusion will not apply in the event that:

a. the Insured has placed or obtained coverage or has placed the funds of a client or account with an admitted insurance carrier; which was

b. rated "A" or higher by the A.M. Best Company, Inc. at the time such coverage or such funds were placed.

(*Id.* at 176.)

## III. Analysis

### A. Breach of Contract Claim

■ The Smiths' breach of contract claim asserts that Continental owed Sprecher coverage and a defense under the terms of the insurance policy and the policy summary. Although we believe that the District Court's grant of summary judgment as to the breach of contract claim could be affirmed on a number of grounds, we choose just one.

Exclusion 6 of the insurance policy clearly bars coverage. As outlined above, that exclusion precludes coverage for any claim "involving services or products not approved by" HTK. The Smiths' claims against Sprecher "involv[e] ... products not approved by" HTK—to wit, Evergreen and the off-shore asset protection trusts. The Evergreen investments were not approved by any Broker/Dealer and thus plainly fall under the language of the exclusion.[1]

### B. Bad Faith Denial of Coverage Claim

By statute, Pennsylvania provides for interest, costs, attorneys' fees, and punitive damages for a bad faith denial of

---

**1.** The Smiths also argue that Sprecher was entitled to coverage under the "reasonable expectations" doctrine. That doctrine provides, generally, that courts should look to the reasonable expectations of the insured when considering the extent of coverage. *See, e.g., Tonkovic v. State Farm Mut. Auto. Ins. Co.,* 513 Pa. 445, 521 A.2d 920, 925 (1987) (holding that where an "individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change").

The Smiths' reasonable expectations argument is meritless: the doctrine generally applies only to unsophisticated non-commercial insureds, and only to protect such insureds from "policy terms not readily apparent and from insurer deception." *See Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 418 F.3d 330, 344 (3d Cir.2005). Additionally, unreasonable expectations will never control, and any expectation that he would be insured for claims arising out of the marketing of unapproved products would surely have been an unreasonable one for Sprecher to hold.

insurance coverage. *See* 42 Pa. Cons.Stat. § 8371. Although the statute does not contain a definition of "bad faith," the Pennsylvania courts have adopted one:

> 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (994) (quoting Black's Law Dictionary 139 (6th ed.1990)); *see also Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997) ("The standard for bad faith claims under § 8371 is set forth in *Terletsky*.").

There is a "two-part test" for bad faith claims, and "both elements . . . must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger*, 115 F.3d at 233.

■ For the Smiths to succeed, there must be evidence from which a factfinder could conclude that Continental had no "reasonable basis for denying benefits" and that it knew of or disregarded the lack of a reasonable basis. Here, there is evidence of neither: Continental clearly did have a reasonable basis for the denial of coverage, *see supra*, and there is no evidence whatsoever to support the second prong. While perhaps Continental should have spoken with Sprecher before it made a final coverage decision, a failure to follow best practices does not give rise to a bad faith claim. Summary judgment was properly granted.

## IV. Conclusion

Ambiguities in insurance policies, of course, must be construed "against the insurer, the drafter of the agreement." *See, e.g., Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). But there are no ambiguities here, and no genuine issues of material fact. We will affirm the District Court's order granting summary judgment to Continental.