NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3477
_____

FREDERICK MUTUAL INSURANCE CO.,

Appellant

v.

DONALD HALL, INDIVIDUALLY AND TRADING
AS HALLSTONE, INC.; MARIA A. HALL,
INDIVIDUALLY AND TRADING AS HALLSTONE, INC.;
HALLSTONE, INC.; R. LEE HULKO; BRADLEY B. FAIR

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-15-cv-03354)
Honorable J. Curtis Joyner, District Judge

_____

Submitted under Third Circuit LAR 34.1(a)
November 5, 2018

BEFORE:  HARDIMAN, KRAUSE, and GREENBERG, Circuit Judges

(Filed: November 8, 2018)
_____

OPINION*
_____

_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

Plaintiff-Appellant Frederick Mutual Insurance Company ("Frederick") has filed this appeal in a declaratory judgment action in which it sought to have the District Court declare that it did not have the duty to defend and indemnify Defendant-Appellee Hallstone, Inc. ("Hallstone") under an insurance policy that Frederick issued to Hallstone in a state court action against Hallstone. After holding a bench trial, the Court entered judgment for Hallstone, finding that the policy obligated Frederick to defend Hallstone in the state court action. We will reverse.

## II. FACTUAL BACKGROUND

We rely on the District Court's findings of fact during its bench trial. Defendant-Appellees Donald and Marie Hall formed Hallstone to provide stone masonry work for residential premises. On the advice of a builder, Donald Hall ("Hall"), a principal in Hallstone, approached the Fraser Insurance Agency ("Fraser") to obtain an insurance policy to provide in Hall's words "maximum," "soup to nuts" coverage for Hallstone. Fraser obtained a liability policy from Frederick for Hallstone. Hall and Frederick did not have direct contact and Hall never asked for or received a copy of the policy Frederick issued.

Beginning in or around March 2006, Defendant-Appellees R. Lee Hulko and Bradley B. Fair ("the Customers") contracted with Hallstone to provide custom stone masonry work for their home. This project obviously was a substantial undertaking as it

2

took several years to complete and the Customers paid nearly $300,000 for the project. In April 2014, the Customers discovered that some of the stone masonry work that Hallstone had undertaken had been damaged and required substantial repairs ultimately costing $352,294. The Customers attributed the damage to what they regarded was Hallstone's substandard and defective work and consequently they filed a state court action in Pennsylvania against Hallstone alleging breach of warranty, negligence, and related statutory claims.

While defending Hallstone in the state court action, Frederick filed this declaratory judgment action in the District Court, seeking a determination that it did not have a duty under its policy to defend and indemnify Hallstone for its defective workmanship. Frederick filed a motion for summary judgment but the Court denied the motion as it found that there was a question of fact on the question of whether Hall received a copy of the insurance policy from Frederick. At the ensuing bench trial, the Court found that the insurance policy unambiguously excluded faulty workmanship coverage. But the Court also found that Hall believed the policy provided coverage "'if something was done inadvertently', or if his business did something and someone made a claim against his business that he might be liable for," Frederick Mut. Ins. Co. v. Hall, No. 15-3354, 2017 WL 4883157, at *2 (E.D. Pa. Oct. 30, 2017), and that Frederick never provided Hall with a copy of the policy to contradict his belief. Id. at *10. The Court's ultimate finding was that Hallstone had a reasonable expectation of workmanship coverage, and, accordingly, it entered judgment for Hallstone.

3

## III. DISCUSSION

The District Court had diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. We review the Court's findings of fact for clear error, and review its conclusions of law de novo. See Clientron Corp. v. Devon IT, Inc., 894 F.3d 568, 575-76 (3d Cir. 2018). This matter is governed by Pennsylvania law.

In reaching its decision, the District Court found that the insurance policy unambiguously excluded coverage for the faulty workmanship claims the Customers made in the underlying state court action, a conclusion with which we concur. That finding should have been the end of the Court's inquiry.

> It is well-settled that when policy language is unambiguous, we give effect to that language. It is also well-settled that the focus of any inquiry regarding issues of coverage under an insurance policy is the reasonable expectations of the insured. An insured, however, may not complain that its reasonable expectations have been frustrated when the applicable policy limitations are clear and unambiguous.

Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., 941 A.2d 706, 717 (Pa. Super. Ct. 2007) (citations omitted). "[G]enerally, courts cannot invoke the reasonable expectation doctrine to create an ambiguity where the policy itself is unambiguous." Matcon Diamond, Inc. v. Penn Nat'l Ins. Co., 815 A.2d 1109, 1114 (Pa. Super. Ct. 2003). Having found the policy unambiguous, the Court should have entered judgment for Frederick.

Nevertheless, the District Court, relying heavily on Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920 (Pa. 1987), held that the facts of this case warranted the

4

application of the reasonable expectation doctrine. In <u>Tonkovic</u>, an insured specifically had sought to obtain disability insurance from an insurance company that would cover his mortgage payments in the event he was disabled in an accident, even if he was entitled to workmen's compensation benefits by reason of his injury. <u>Id.</u> at 921. Yet, notwithstanding the circumstance that he made his intentions clear to the insurance agent and in his insurance application, the company issued him a policy that excluded disability payments when workmen's compensation was available to an insured as a result of an accident. <u>Id.</u> at 922. Although the agent contended Tonkovic had received a copy of the policy that unambiguously contained the exclusion, substantial evidence was presented at trial that he did not receive a copy of the policy. <u>Id.</u> Finding the company liable, the Pennsylvania Supreme Court held that there was

> a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for. When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes, or not read it at his peril.

<u>Id.</u> at 925.

In contrast, Hall did not apply for the specific type of insurance coverage he now claims that he expected as he asked in general terms for "soup to nuts" coverage though a broad term that was not specific. Thus, Frederick could regard Hall's application for insurance as seeking a general liability insurance policy. However, "[a] liability policy does not provide a guarantee of the policyholder's workmanship." <u>Standard Venetian</u>

5

Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 567 (Pa. 1983) (Hutchinson, J.,

concurring). "Such a guarantee is not within its coverage. I do not believe a businessman

of ordinary intelligence could reasonably expect to obtain a defense against and

indemnity for the cost of properly performing his contract or replacing his failed product

under a liability policy." Id. (citing Selected Risks Ins. Co. v. Bruno, 718 F.2d 67 (3d

Cir. 1983)).

> A businessman purchases a liability insurance policy to transfer the risk and
> cost of unexpected and unintended happenings (occurrences) to his
> insurance company. The company agrees to assume that risk for a
> calculated premium. The company does not, however, provide a guarantee
> of the businessman's workmanship or his products for that premium and
> typically protects itself against such claims by excluding coverage for
> property in the care, custody or control of the insured or property as to
> which the insured for any purpose is exercising control or by language . . . .
> There is usually some form of insurance available to cover injury to or
> destruction of the excluded property at a higher premium which is
> commensurate with the risk. The exclusion is to eliminate securing the
> same coverage under a liability policy at cheaper rates.

Id. at 571 (internal quotation marks omitted) (quoting F.D. Cooke, Jr., Care Custody or

Control Exclusions, 1959 Ins. L.J. 7, 10, (1959).

In Venetian Blind, the Pennsylvania Supreme Court rejected the insured's

argument that it neither was made aware of nor understood the exclusion of workmanship

coverage from its policy, as it found that "the lack of knowledge or understanding of a

clearly drafted exclusion clause in a written contract of insurance executed by both

parties does not render the clause unenforceable." Id. at 564. Although Hall argues that

he never received a copy of the policy, a contention that we accept, and therefore he was

unaware of the exclusion, this circumstance does not change the fact that he was seeking

6

general liability insurance. At no point did he specify that he desired the more costly workmanship insurance. As the court held in Matcon, an insured's failure to request or bargain for a particular coverage precludes a court from finding that the insured expected such coverage, whether or not the insured received a copy of the policy. 815 A.2d at 1115.

Even if we agreed with the District Court's invocation of the reasonable expectation doctrine, Pennsylvania case law makes clear that the Court's application of the doctrine was flawed. As we have held under Pennsylvania law, "[o]nly objectively reasonable expectations are protected[.]" Selected Risk, 718 F.2d at 71. Hall's claim that he expected Hallstone's "maximum," "soup to nuts" liability policy to include workmanship coverage is no more reasonable than if a purchaser of auto insurance expected his policy to cover repairs if his car breaks down, even if he asked for "soup to nuts" coverage. See id. (holding that the insured was not reasonable to expect his basic homeowner's insurance policy to provide coverage for intentional criminal acts). It is simply not the kind of coverage insurance agents and insurance companies expect to provide unless the insured explicitly requests such coverage.

> If we were to allow an insured to override the plain language of a policy limitation anytime he or she was dissatisfied with the limitation by simply invoking the reasonable expectations doctrine, the language of insurance policies would cease to have meaning and, as a consequence, insurers would be unable to project risk. The inability to project risk would dissuade insurers from doing business in the Commonwealth and the net result would be an increase in premiums for consumers. We refuse to set such a deleterious sequence of events into motion.

7

<u>Millers</u>, 941 A.2d at 717-18.  Accordingly, we will reverse the District Court's judgment entered on October 30, 2017, for Hallstone, and will remand the matter to that Court to enter judgment for Frederick.  <u>See</u> 28 U.S.C. § 2106.