**MATCON DIAMOND, INC., a Pennsylvania Corporation and Kevin Easterday, Appellants,**

v.

**PENN NATIONAL INSURANCE COMPANY, A Pennsylvania Corporation, Appellee.**

**Appeal of Matcon Diamond, Inc., a Pennsylvania Corporation.**

Superior Court of Pennsylvania.

Argued Oct. 22, 2002.
Filed Jan. 17, 2003.

Robert J. Colaizzi, Pittsburgh, for appellant.

Stephen J. Poljak, Pittsburgh, for Penn National, appellee.

Before MUSMANNO, LALLY–GREEN, and KLEIN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Matcon Diamond, Inc., appeals from the order dated January 10, 2002, granting a declaratory judgment in favor of defendant/Appellee, Penn National Insurance Company, Inc. (Penn National). We affirm.

¶ 2 The trial court set forth the factual history of the case as follows:

> [Kevin] Easterday was injured when he was overcome by carbon monoxide fumes while working in an enclosed area in the Kaufmann's store at the Beaver Valley Mall. [Appellant] was a subcontractor performing the job of cutting concrete with a gasoline powered saw from which carbon monoxide was emitted. The work area had been enclosed by plastic by another contractor. Easterday sued [Appellant] as well as other contractors and the May Company for his injuries and [Appellant] requested Penn National to provide a defense to it in the negligence action. The Complaint sets forth various theories of negligence but all are founded upon the fact that a gasoline powered saw was used in an enclosed area. Penn National refused to provide a defense because of the total pollution exclusion.
>
> The total pollution exclusion provides as follows:
>
>> This insurance does not apply to:
>>
>> . . .
>>
>> f.(1) 'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration,

release or escape of pollutants at any time.

>> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste[.]

Trial Court Opinion, 1/10/2002, at 1–2.

¶ 3 Appellant filed a declaratory judgment action, seeking an order declaring that Penn National has a duty to defend and indemnify Appellant in the underlying action. Both parties filed motions for summary judgment. On January 10, 2002, the trial court denied Appellant's motion, granted Penn National's motion, and declared that the pollution exclusion barred coverage. This appeal followed.

¶ 4 Appellant raises three issues on appeal, which may be summarized as follows:

1. Did the trial court err in concluding that carbon monoxide was a pollutant?

2. Did the trial court err in granting summary judgment, when a genuine issue of material fact existed as to whether Appellant reasonably expected coverage for the accident?

3. Did the trial court err in granting summary judgment when the record reflects that Appellant did not receive a copy of the policy before the accident took place?

Appellant's Brief at 6.

¶ 5 Our scope and standard of review are as follows:

> We must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. In order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a

jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Finally, we stress that summary judgment will be granted only in those cases which are clear and free from doubt. Our scope of review is plenary.

*Wagner v. Erie Ins. Co.,* 801 A.2d 1226, 1230 (Pa.Super.2002) (citations omitted).

¶ 6 Recently, this Court summarized many principles relating to the proper interpretation of pollution exclusions, as follows:

Interpretation of an insurance contract is a matter of law. *See Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). Our standard of review, therefore, is plenary. *Young v. Equitable Life Assurance Society of the United States,* 350 Pa.Super. 247, 504 A.2d 339, 341 (Pa.Super.1986). Where, as in this case, "an insurer relies on a pollution exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison,* 557 Pa. at 605, 735 A.2d at 106.

In interpreting the language of a policy, the goal is "to ascertain the intent of the parties as manifested by the language of the written instrument." *See Madison,* 557 Pa. at 606, 735 A.2d at 106. Indeed, our Supreme Court has instructed that the "polestar of our inquiry ... is the language of the insurance policy." *Id.* When construing a policy, "words of common usage ... are to be construed in their ·natural, plain and ordinary sense ... and we may inform our understanding of these terms by considering their dictionary definitions" and where "the language of the [policy] is clear and unambiguous, a court is required to give effect ‚to that language." 557 Pa. at 606–608, 735 A.2d at 106–108 (citations omitted). However, "where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.* Thus, while a court will not "distort the meaning of the language or resort to a strained contrivance in ‚order to find an ambiguity", it must find that "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.*

Under *Madison,* we must determine whether the specific substance at issue is a pollutant within the meaning of the particular insurance contract. *Id.,* 735 A.2d at 107. The Supreme Court directed that:

The pertinent inquiry is not ... whether the policy's definition of "pollutant" is so broad that virtually any substance, including many useful and necessary products, could be said to come within its ambit. Rather, guided by the principle that ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts, we focus on the specific product at issue.

*Id.* Moreover, when the question is one of contract interpretation, public policy arguments are irrelevant. 557 Pa. at 611 n. 8, 735 A.2d at 108 n. 8.

Finally, under *Madison,* we must determine whether the requisite causation has been demonstrated. 557 Pa. at 610–613, 735 A.2d at 109–110. Absent causation between the alleged pollutant and the injury, the claim would be outside of a pollution exclusion clause. *Id.*

*Municipality of Mt. Lebanon v. Reliance Ins. Co.,* 778 A.2d 1228, 1231–1232 (Pa.Super.2001).

¶ 7 First, Appellant argues that the trial court erred by ruling that carbon monoxide was unambiguously a "pollutant" under the language of the policy.[1] This issue appears to be one of first impression for Pennsylvania state appellate courts. We conclude that the court did not err.

¶ 8 This Court must interpret the definition of a "pollutant" with reference to: (1) the specific product at issue; and (2) the particular factual events giving rise to the underlying claim. *Wagner*, 801 A.2d at 1232.

¶ 9 The policy defines a pollutant as an "irritant" or a "contaminant."[2] This Court recently defined an "irritant" as "a biological, chemical, or physical agent that stimulates a characteristic function or elicits a response, especially an inflammatory response." *Mt. Lebanon*, 778 A.2d at 1233. A "contaminant" is defined as something which "render[s] [another thing] impure or unsuitable by contact or mixture[.]" *Id.*

¶ 10 In the instant case, we conclude that carbon monoxide is unambiguously a "contaminant." First, the dictionary definition of "carbon monoxide" is "a colorless, odorless, poisonous gas[.]" *Random House Webster's Unabridged Dictionary (2d ed.)* (emphasis added). Carbon monoxide, when mixed with the air, makes the air "impure or unsuitable" for breathing by introducing a poisonous, toxic substance.

¶ 11 Moreover, carbon monoxide is regulated by federal and state law. The federal Clean Air Act designates carbon monoxide as a pollutant. *See*, 42 U.S.C. § 7408(a)(1); 40 C.F.R. Part 50. The Pennsylvania Hazardous Sites Cleanup Act, 35 Pa.C.S.A. § 6022.103, defines a "contaminant" in reference to the Federal Superfund Act, a/k/a CERCLA, 42 U.S.C. § 9601 *et seq.*, which in turn defines a "pollutant or contaminant" as follows:

> (33) The term "pollutant or contaminant" shall include, but not be limited to, any element, substance, compound, or mixture, including disease-causing causing agents, which after release into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, will or may reasonably be anticipated to cause death, disease, behavioral abnormalities, cancer, genetic mutation, physiological malfunctions (including malfunctions in reproduction) or physical deformations, in such organisms or their offspring[.]

42 U.S.C. § 9601(33). Carbon monoxide is a substance or compound which, upon inhalation, may reasonably be anticipated to cause death or physiological malfunctions.[3] Moreover, in the underlying action, Easterday has alleged that he suffered physical harm from the most commonly-known danger of carbon monoxide: namely, breathing it in an enclosed space. For these

---

1. The parties do not dispute that the gas-powered saw discharged, dispersed, and/or released carbon monoxide into the air. Thus, this section of the pollution exclusion § f.(1), *supra*, is not at issue.

2. Two notable recent Supreme Court cases, *Madison* and *Lititz Mut. Ins. Co. v. Steely*, 567 Pa. 98, 785 A.2d 975 (2001), did not expressly define "pollutant." In each case, however, the Court concluded that the substance at issue was unambiguously a pollutant. *Madi-*

*son*, *supra* (fumes from concrete flooring sealant were a pollutant); *Lititz*, *supra* (lead-based paint is a pollutant).

3. For similar reasons, this Court could readily conclude that carbon monoxide is an "irritant." *See*, *Madison*, *supra* (chemical fumes which caused a grown man to become dizzy and fall into a trench were an "irritant"). Carbon monoxide, when breathed, also has a seriously debilitating (if not fatal) effect.

reasons, the trial court did not err as a matter of law in determining that carbon monoxide was a "pollutant" under the policy.

¶ 12 *Mt. Lebanon, supra*, is readily distinguishable. In that case, tree roots had infiltrated a poorly-constructed natural gas line, causing gas to leak into a residence and cause a fire. The insurer sought to exclude coverage based on the pollution exclusion. Thus, the issue was whether natural gas is a pollutant under the terms of the policy. This Court noted that the record contained no evidence regarding the status of natural gas as an irritant or contaminant, except for the fact that federal and state laws exclude natural gas as a pollutant. *Mt. Lebanon,* 778 A.2d at 1233–1234. Moreover, the mere fact that natural gas is dangerous or flammable did not compel a conclusion that it is a "pollutant" under the terms of the policy. *Id.* Thus, the Court held that the insurer failed to carry its burden of proof. *Id.* at 1234. In the instant case, the dictionary definition of carbon monoxide as a "poisonous gas," combined with its well-known toxic effects and its status as a regulated pollutant under state and federal law, compels the opposite result.

■ ¶ 13 Appellant contends that a genuine issue of material fact exists because: (1) no controlling Pennsylvania authority had squarely held that carbon monoxide is a pollutant; and (2) even Penn National's own expert on the pollution exclusion clause was unsure whether carbon monoxide would be considered a pollutant. Appellant's Brief at 12–22. The critical question here is not whether carbon monoxide had been designated a pollutant by our Courts or by Penn National's expert; rather, the critical question is whether carbon

monoxide is unambiguously a pollutant under the terms of the policy. *See, Madison, supra* (courts must look to the plain language of the policy to determine whether a substance is a pollutant).[4] The trial court determined, correctly, that carbon monoxide is unambiguously a pollutant. We see no abuse of discretion or error of law. Appellant's first claim fails.

■ ¶ 14 Next, Appellant argues that a genuine issue of material fact exists as to whether Appellant reasonably expected coverage for the accident. Our Supreme Court has held that the polestar for determining the parties' intent is the language of the policy itself. *Madison,* 735 A.2d at 106. This Court has noted that, generally, courts cannot invoke the reasonable expectation doctrine to create an ambiguity where the policy itself is unambiguous. *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 886 (Pa.Super.2000). Our Supreme Court has identified only two limited exceptions to this principle: (1) protecting non-commercial insureds from policy terms which are not readily apparent; and (2) protecting non-commercial insureds from deception by insurance agents. *Madison,* 735 A.2d at 109 n. 8, *citing, Tonkovic v. State Farm Mut. Ins. Co.,* 513 Pa. 445, 521 A.2d 920 (1987); and *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978).

¶ 15 In the instant case, Appellant does not attempt to establish that the terms were hidden, or that Penn National's agent deceived Appellant into thinking that the policy would provide coverage when in fact it did not. Instead, Appellant argues that it expected to be covered because: (1) the injury occurred on the job site; and (2) Appellant's work did not appear to create

---

4. If we accepted Appellant's reasoning, no substance could be declared a pollutant until another court made such a declaration. This position is untenable. Courts must routinely decide cases of first impression regarding whether a given substance is a pollutant.

"pollution" in the ordinary sense of the word. Appellant's Brief at 23–26. As noted above, under Pennsylvania law, mere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage. *Williams, supra.* We also note that our Supreme Court has rejected the position that pollution exclusions should be limited to claims in the nature of an environmental catastrophe. *Madison,* 735 A.2d at 108. This claim fails.

¶ 16 Next, Appellant argues that a genuine issue of material fact exists because it did not receive a copy of the policy until after Easterday's injury took place. Appellant cites *Tonkovic, supra.* Where the parties to an insurance contract specifically negotiate for a particular type of coverage, the insurer may not avoid coverage by later sending the insured a policy which does not contain the bargained-for provisions. *Tonkovic,* 521 A.2d at 925.

¶ 17 The instant case is distinguishable. The record reflects that Appellant did not specifically request or bargain for any particular pollution coverage or pollution exclusion. Thus, the record reflects that Appellant did not have any particular expectation regarding the scope of the pollution exclusion that was included in the policy. Accordingly, the policy which Appellant ultimately received could not have violated any expectation on Appellant's part. *See, Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983). This claim fails.

¶ 18 Finally, Appellant argues that a genuine issue of material fact exists as to proximate cause. Specifically, Appellant argues that the proximate cause of Easterday's injuries may have been Appellant's negligence in ventilating the site, rather than Easterday's inhalation of carbon monoxide. Appellant's Brief at 29.

¶ 19 In *Madison,* our Supreme Court rejected a similar argument. The policy in *Madison* excluded coverage for injuries "arising from" the release of a pollutant. The Court held that the term "arising from" was unambiguous, and was sufficiently broad to encompass a "but-for" causal relationship between the injury and the inhalation of toxic fumes. This was true even though poor ventilation or other causes may have also contributed to the victim's injury. *Madison,* 735 A.2d at 110.

¶ 20 In the instant case, the policy is even more unambiguous. It excludes from coverage " 'bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." (emphasis added). It is inescapable that Easterday's injuries would not have occurred but for the release of carbon monoxide. *See, Wagner.* This claim fails.

¶ 21 Order affirmed.