**CANAL INSURANCE CO., Plaintiff,**

v.

**UNDERWRITERS AT LLOYD'S LONDON, Defendant.**

No. Civ.A. 03–2333.

United States District Court, E.D. Pennsylvania.

Aug. 25, 2004.

Walter H. Swayze, III, Segal, McCambridge, Singer & Mahoney, Philadelphia, PA, for Plaintiff.

Ronald S. Collins, Jr., Wright & O'Donnell, PC, Conshohocken, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

This declaratory action arises out of a coverage dispute between two insurance companies. The subject of the dispute involves a 1996 Kenworth tractor, serial no. 1XKAD69XOTJ682926 (hereinafter the "Tractor"), owned by Sukhjit Singh ("Mr. Singh"). During the relevant period, Mr. Singh was an independent trucker who leased his vehicle to BIR Transport Co. ("BIR"), a motor carrier, pursuant to a leasing agreement.

One of the insurance companies involved in the dispute, plaintiff Canal Insurance Co. ("Canal"), issued a "Business Auto Policy" naming BIR as an insured and the Tractor as a covered vehicle. The other insurance company, defendant Underwriters at Lloyd's London ("Underwriters"), issued a "Non-trucking Liability Insurance Policy" naming Mr. Singh as the insured and also listing the Tractor as a covered vehicle.

While both policies were in effect, the Tractor was involved in an automobile accident, which gave rise to a lawsuit in state court where BIR, Mr. Singh, and the driver of the Tractor at the time of the accident were named as defendants. Canal settled the state action for $58,500 in exchange for a release in favor of BIR, Mr. Singh, and the driver. Underwriters refused to defend the defendants in the state action and refused to indemnify Canal. Canal now seeks indemnification from Underwriters in this action for the monies it spent defending and indemnifying defendants in the state action.

The issue before the Court is whether the Underwriters policy provides coverage for the liability caused by the accident involving the Tractor. If so, Canal is entitled to indemnification from Underwriters. Canal has brought this declaratory judgment action and the parties, after discovery, have filed cross-motions for summary judgment.[1]

## II. FACTS AND DISCUSSION

1. When confronted with cross-motions for summary judgment "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2720 (1998). Thus, with respect to each party, summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 251–52, 106 S.Ct. 2505. In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Thus, summary judgment should be granted only if no reasonable trier of fact could find for the non-moving party. *See id.; Radich v. Goode,* 886 F.2d 1391, 1395 (3d Cir.1989).

## A. Facts Surrounding the Accident.[2]

On or about April 23, 2000, Mr. Singh instructed one of his associates to drive the Tractor from Harrisburg, Pennsylvania to a dealership in Chester, Pennsylvania for the purpose of selling the Tractor or trading it in for a new tractor. Mr. Singh's intention was to trade in the Tractor and get a new one,[3] and then try to get a load in the area for delivery on behalf of BIR. BIR was made aware of the plans to go to Chester, but it is undisputed that BIR did not dispatch the Tractor from Harrisburg to Chester. However, in case a dispatch were to become available in the Chester area, Mr. Singh directed that an empty trailer be attached to the Tractor as it traveled to Chester. While en route to Chester, the Tractor was involved in the automobile accident which gave rise to the lawsuit in state court. Ultimately, Canal paid out $85,959.42 in fees, litigation costs, and settlement amounts.

## B. Underwriters' Motion for Summary Judgment.

The Underwriters policy names Mr. Singh as the insured and lists the Tractor as a covered vehicle under the policy. However, the policy excludes from coverage certain "[b]usiness use[s]." Specifically, exclusion 8 of the policy provides that the insurance does not cover:

> [a] covered automobile while it is engaged in Business Use, such as proceeding to any location, pursuant to the request, direction, control and/or dispatch, of any person or entity other than the Insured, or complying with any term of a presently effective, written lease with a motor carrier.

Resp. Mot. Sum. Judg., at Exhibit D. Further, in a section entitled "Definitions," the policy provides as follows:

> "Business Use" includes, but is not limited to, any use of the auto that *promotes the business purposes of the Insured* or the purposes of a written, permanent lease that the Insured has signed with a motor carrier such as hauling a load for the motor carrier, being under the request, direction, control and/or dispatch to haul a load for the motor carrier or the pick-up a load, laying over on the road to await pick-up of a load or traveling for the purposes of repairing or maintaining the covered auto. The foregoing examples of "Business Use" are illustrative and not exhaustive.

*Id.* (emphasis added).

Therefore, if at the time of the accident, the insured's (Mr. Singh's) listed vehicle (the Tractor) was engaged in activity that "promote[d] the business purposes of the Insured," the exclusion applies and coverage was properly denied by Underwriters. Reduced to its essence, the Court must answer, based upon the undisputed facts, three questions:

1. Who is the insured?

2. What is the business of the insured?; and

3. Did the trip from Harrisburg, Pennsylvania to Chester, Pennsylvania "promote the business purposes of the [i]nsured"?

To answer these questions, the Court turns to the Canal policy itself.

▮ The parties agree that Pennsylvania law governs consideration of the Canal policy. Where an insurer relies on a poli-

---

2. These facts are undisputed.

3. In his deposition, Mr. Singh stated that he wanted to trade in or sell the Tractor, because this truck required too much repair on it. Spending—spent too much money on the engine. So, I don't want to spend anymore. Buy a new one.
Dep. Tr., at 12.

cy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999). As noted by the Pennsylvania Supreme Court in *Madison,* the principles of insurance contract interpretation are well-settled:

> The task of interpreting an insurance contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. [A court] will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

735 A.2d at 106 (internal citations and quotations omitted).

■ One, under the Underwriter's policy, Mr. Singh is the named insured. Although BIR is apparently an affiliated entity, and the release from the state action ran to BIR as well as Mr. Singh, under the plain language of the policy, Mr. Singh is the named insured and BIR is not.

Two, the record shows that Mr. Singh is an independent trucker in the business of leasing his tractors to BIR. By contrast, BIR operates as a "motor carrier." *See Prestige Casualty Co. v. Michigan Mutual Ins. Co.*, 99 F.3d 1340, 1342–1343 (6th Cir. 1996) (summarizing that "motor carriers," who commonly lease equipment from independent contractors, are persons engaged in the transportation of property as a common or contract carrier). Since Mr. Singh is the named insured under the Canal policy, the business of the insured under the policy is Mr. Singh's truck leasing business, and not BIR's motor carrier business.

Three, the trip from Harrisburg, Pennsylvania to Chester, Pennsylvania "promote[d]" Mr. Singh's truck leasing business. "Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense … [and the court may] inform [its] understanding of these terms by considering their dictionary definitions." *Madison,* 735 A.2d at 108. The term "promotes" is defined in Webster's Ninth Collegiate Dictionary (1990) as "to contribute to the growth or prosperity of" or "furthers." It is beyond argument that trading up one tractor for another (or attempting to do so) "further[ed]" or "contribute[d] to the growth or prosperity of" Mr. Singh's truck leasing business.

Since Mr. Singh is the insured, engaged in the business of leasing tractors, and further since the act of traveling from Harrisburg to Chester "contribute[d] to the growth or prosperity of" or "further[ed]" i.e., "promote[d]" the business purposes of Mr. Singh's leasing business, the losses resulting from the accident fall within the exclusion of the Underwriters policy. Under the undisputed facts, Un-

derwriters is entitled to summary judgment.[4]

## C. Canal's Motion for Summary Judgment.

Rather than offering a reasonable alternative interpretation, Canal argues that the phrase "promotes the business purposes of the Insured" is ambiguous and unclear as demonstrated by the uncertainty in coverage presented by the following hypothetical: if the Tractor were being driven to the grocery store with an empty trailer in tow, and on a whim, the driver decided to trade it in or sell it at a dealership or buy a quart of oil for the Tractor, Lloyd could deny coverage under its business use exclusion because the Tractor was used to promote the business purposes of the insured. The Court shall construe this hypothetical as an argument that the sweep of the exclusion renders it ambiguous.

In *Madison*, an insured made a similar argument before the Supreme Court of Pennsylvania with regard to an exclusion clause in a general commercial liability policy. 735 A.2d at 100. At issue there was whether the term "pollutants" in an exclusion, which provided that the policy did not provide coverage for bodily injury caused by the "discharge, dispersal, seepage, migration, release or escape of pollutants," was ambiguous. *Id.* at 102–03. The insured argued that the term was ambiguous because, as summarized by the court, the term "is so broad that virtually any substance, including many useful and necessary products, could be said to come within its ambit." *Id.* at 107.

The Supreme Court of Pennsylvania rejected this approach teaching instead that a court's inquiry into the matter should be "guided by the principle that *ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts.*" *Id.* (emphasis added). Applying these teachings, the Pennsylvania Supreme Court in *Madison* found that, under the particular facts of the case (and not by reference to some general hypothetical), the exclusion at issue applied to the substance in question. *Id.* at 108.

Similarly here, the issue is not whether under certain facts hypothesized by plaintiff the exclusion may or may not apply. The issue is whether under the *specific facts of this case* the insurer has met its burden of establishing that the exclusion applies. *Madison* precludes plaintiff's argument that, because under some extreme facts the applicability of the exclusion is less than certain, the exclusion should be deemed categorically ambiguous.

■ Canal also argues that Underwriter's position is precluded by the doctrine of "reasonable expectations of the insured" as that doctrine has developed under Pennsylvania law. The Court disagrees. The Supreme Court of Pennsylvania has held that the "polestar" for determining the parties' intent is the language of the policy itself. *Madison*, 735 A.2d at 106. To that end, the Superior Court of Pennsylvania has noted that, "generally, courts cannot invoke the reasonable expectation doctrine to create an ambiguity where the policy itself is unambiguous." *Matcon Diamond v. Pennsylvania Nat'l Ins. Co.,*

---

**4.** In addition to the argument that coverage was properly denied under exclusion 8 of its policy, Underwriters argues that coverage was also properly denied because Mr. Singh, as the insured, failed to procure an "effective" lease agreement with BIR for the Tractor, a condition precedent to coverage Underwriters' view. Underwriters further argues that coverage under its policy was secondary to coverage under Canal's policy. Because the Court finds that coverage was properly denied under the "Business Use" exclusion of Underwriters' policy, the Court need not address these issues.

2003 Pa.Super. 22, 815 A.2d 1109, 1114 (2003) (citing *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 886 (Pa.Super.2000)). As recognized by the *Matcon* court, the highest court in Pennsylvania has limited the argument that the reasonable expectations of the insured trump the clear and unambiguous language of a policy to two occasions: (1) protecting non-commercial insureds from policy terms which are not readily apparent; and (2) protecting non-commercial insureds from deception by insurance agents. *Id.* (citing *Madison,* 735 A.2d at 109 n. 8).

In the instant case, plaintiff has advanced no argument that Underwriters' policy terms were not readily apparent or that there was deception by the insurance agents. Given that none of the recognized exceptions to the general principles of insurance policy interpretation has been invoked by Canal, the Court declines to look beyond the plain and unambiguous language of the policy in order to scrutinize what Mr. Singh's expectations may have been regarding coverage.[5]

Finding that there are no genuine issues of material fact, and that exclusion 8 of the Underwriters policy applies to the incident involving the Tractor, the Court concludes that coverage was properly denied by Underwriters. Therefore, Canal's motion for summary judgment is denied.

## III. CONCLUSION

Based on the foregoing, defendant Underwriters' motion for summary judgment is granted. Plaintiff Canal's cross motion for summary judgment is denied.

### ORDER

**AND NOW,** this **24th day** of **August 2004,** pursuant to the accompanying memorandum, it is **ORDERED** that defendant's motion for summary judgment (doc. no. 10) is **GRANTED.**

It is **FURTHER ORDERED** that plaintiff's cross-motion for summary judgment (doc. no. 14) is **DENIED.**

**AND IT IS SO ORDERED.**

### JUDGMENT

**AND NOW,** this **24th day** of August 2004, it is **ORDERED** that **JUDGMENT** is **ENTERED** in favor of defendant and against plaintiff.

It is **FURTHER DECLARED** that, pursuant to exclusion 8, Underwriters' policy does not provide coverage for the liability caused by the April 24, 2000 accident involving the 1996 Kenworth Tractor.

**AND IT IS SO ORDERED.**

---

**5.** Plaintiff also argues that public policy supports its argument that the phrase is ambiguous. For this proposition, plaintiff cites *Lincoln General Ins. v. Liberty Mut. Ins. Co.,* 2002 Pa.Super. 208, 804 A.2d 661 (Pa.Super.2002) and *Connecticut Indemnity Co. v. Stringfellow,* 956 F.Supp. 553 (M.D.Pa.1997). The Court will assume that indeed there is a public policy to ensure a source of compensation for injured parties when a lease agreement, common in the trucking industry, might create confusion over who would be responsible for accidents. However, there are statutory and regulatory mandates, such as those discussed in *Prestige Casualty,* 99 F.3d at 1342 and *Carolina Casualty Ins. Co. v. Ins. Co. Of North America,* 595 F.2d 128, 134–35 (3d Cir.1979) in place in recognition of this policy. Moreover, given that the injured parties in this case have already been compensated, the public policy favoring compensation has been vindicated.